**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| WSOU INVESTMENTS, LLC d/b/a BRAZOS LICENSING AND DEVELOPMENT,<br><br>      Plaintiff,<br><br>    v.<br><br>DELL TECHNOLOGIES INC., DELL INC., EMC CORPORATION, AND VMWARE, INC.,<br><br>      Defendants. | Case No. 6:20-cv-00485-ADA<br><br>**JURY TRIAL DEMANDED** |

**DEFENDANTS' OPPOSED MOTION
FOR LEAVE TO AMEND INVALIDITY CONTENTIONS**

## TABLE OF CONTENTS

Page

I. INTRODUCTION ..................................................................................................................1

II. BACKGROUND ....................................................................................................................2

    A. The '309 Patent ..........................................................................................................2

    B. Procedural History and Defendants' Search ..............................................................3

    C. The Additional Prior Art ............................................................................................4

        1. Bertsekas ........................................................................................................4

        2. Fodor ..............................................................................................................6

        3. Krishnan .........................................................................................................7

III. ARGUMENT ..........................................................................................................................8

    A. Defendants Have Been Diligent, and Their Inability to Include the Additional Prior Art in Their June 25, 2021 Invalidity Contentions Was Reasonable ....................................................................................................................9

    B. Defendants' Amendments Are Important to the Case ..............................................11

    C. WSOU Will Not Be Prejudiced by the Amendment and a Continuance Would Be Unnecessary ..............................................................................................12

IV. CONCLUSION .....................................................................................................................13

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Arbitron, Inc. v. Int'l Demographics Inc.*,
 Case No. 2:06-cv-434 (TJW), 2008 WL 4755761 (E.D. Tex. Oct. 29, 2008) ......................... 8

*Maxell Ltd. v. Apple Inc.*,
 No. 5:19-CV-00036-RWS, 2020 WL 10456917 (E.D. Tex. Feb. 24, 2020) ..................... 9, 11

*Motio, Inc. v. Avnet, Inc.*,
 No. 4:12-CV-647, 2015 WL 5952530 (E.D. Tex. Oct. 13, 2015) ........................................ 11

*MV3 Partners LLC v. Roku, Inc.*,
 No. 6:18-CV-00308-ADA, Dkt. 146 (W.D. Tex. Mar. 23, 2020) ........................................... 8

*Ohio Willow Wood Co. v. Thermo-Ply, Inc.*,
 No. 07-CV-274, 2009 WL 10677580 (E.D. Tex. June 10, 2009) ........................................... 9

*S & W Enters., L.L.C. v. Southtrust Bank of Ala.*,
 315 F.3d 533 (5th Cir. 2003) ................................................................................................. 8

*Tyco Healthcare Grp. LP v. E-Z-EM, Inc.*,
 No. 2:07-CV-262 (TJW), 2010 WL 7853420 (E.D. Tex. Apr. 1, 2010) ................................ 13

*Uniloc 2017 LLC v. Google LLC*,
 No. 2:18-cv-00493-JRG-RSP, 2019 WL 6465318 (E.D. Tex. Dec. 2, 2019) .................... 9, 11

**RULES**

Fed. R. Civ. P. 16(b)(4) ................................................................................................................. 8

# TABLE OF ABBREVIATIONS

| Abbreviation | Term |
|---|---|
| '133 patent | U.S. Patent No. 7,539,133 |
| '309 patent | U.S. Patent No. 7,636,309 |
| '360 patent | U.S. Patent No. 7,092,360 |
| '800 patent | U.S. Patent No. 9,164,800 |
| Asserted Claims | Claims 1–11, and 16 of the '309 patent |
| Bertsekas | Bertsekas, Dimitri et al., Data Networks, Prentice Hall, New Jersey, Second Edition (1992) |
| Defendants | Dell Technologies Inc., Dell Inc., EMC Corporation, and VMware, Inc. |
| Fodor | Fodor, Gabor et al., Path Optimization for Elastic Traffic Under Fairness Constraints, Teletraffic Engineering in the Internet Era (Proceedings of ITC), Teletraffic Science and Engineering, vol. 4 (2001) |
| Invalidity Contentions | Defendants' Invalidity Contentions (June 25, 2021) (Ex. C) |
| Krishnan | Krishnan, Ram et al., An Approach to Path-Splitting in Multipath Networks, CENG Technical Report 92-10, Department of Electrical Engineering – Systems, University of Southern California, Los Angeles (August 1992) |
| Additional Prior Art | Bertsekas, Fodor, and Krishnan |
| WSOU | WSOU Investments, LLC d/b/a Brazos Licensing and Development |

## TABLE OF EXHIBITS

| Exhibit | Document |
|---|---|
| A | '309 patent |
| B | Defendants' Preliminary Invalidity Contentions (Dec. 9, 2020) |
| C | Defendants' Invalidity Contentions (June 25, 2021) |
| D | Defendants' Request for Ex Parte Reexamination (Dec. 17, 2021) |
| E | Defendants' First Amended Invalidity Contentions (Jan. 10, 2022) |
| F | Email from Mark Siegmund to Jaysen Chung (Jan. 26, 2022) |
| G | Order Granting Request for Ex Parte Reexamination (Jan. 26, 2022) |
| H | Bertsekas |
| I | Fodor |
| J | Krishnan |
| K | Prosecution History of U.S. Patent App. No. 11/169,194, Applicant Remarks (June 5, 2009) |
| L | Email from the Court to Counsel (Dec. 6, 2021) |

I.      INTRODUCTION

Defendants respectfully move for leave to amend their Invalidity Contentions solely as to the '309 patent based on newly discovered prior art, and submit that good cause exists for such leave.  First, Defendants have been diligent in their prior art search, and the timing of amendment based on newly discovered prior art was reasonable given the subject matter of the asserted patents and the large number of asserted claims, both of which necessitated a highly burdensome prior art search.  Throughout this litigation, Defendants have engaged in extensive searching to establish the invalidity of WSOU's asserted patent claims, of which there were over one hundred until just weeks ago.  Even after serving their June 2021 Invalidity Contentions, Defendants continued to diligently search for prior art in the crowded fields relevant not only to the '309 patent, but also the three other patents-in-suit.  This investigation resulted in the identification of the Additional Prior Art (Bertsekas, Fodor, and Krishnan) just months after the June 2021 deadline, notwithstanding the nature and large quantity of the asserted claims.

Second, each of the Additional Prior Art references is important to Defendants' invalidity arguments.  Indeed, the PTO recently ordered *ex parte* reexamination ("EPR") of all sixteen claims of the '309 patent based in part on the Additional Prior Art, and Bertsekas—a textbook published fourteen years before the '309 patent's filing date—discloses the very mathematical formula present in all of the asserted claims of the '309 patent and that the patentee argued to the Patent Office was the key advance over the prior art.  Fodor and Krishnan likewise include compelling disclosure of the subject matter of the asserted dependent claims of the '309 patent.

Finally, WSOU will not be prejudiced by the amendment because of the current posture of this litigation.  The Additional Prior Art references, and thus this motion, pertain only to the '309

patent—one of the four asserted patents asserted across WSOU's four cases[1] against Defendants. Fact discovery will not close until May, and trial is several months after that, obviating any need for continuance. Furthermore, WSOU has had sufficient notice of the three Additional Prior Art references since at least December 2021, when Defendants filed the EPR. Thus, good cause exists for this Court to grant Defendants leave to amend their Invalidity Contentions.

## II. BACKGROUND

### A. The '309 Patent

The purported improvement offered through the '309 patent is the use of a *mathematical formula* to split flows of data traffic (referred to as "intra-flow splitting") that are routed onto different paths of a data network. Ex. A, 3:5–8. According to the patent, a "traffic flow" "refers to a group (*e.g.*, two or more) of packets that are to be routed in [a] network through the same source node/port and destination node/port pairing." *Id.* at 2:63–66. A "path" "refers to a set of two or more nodes and one or more links between the nodes." *Id.* at 2:67–3:1. "Nodes" "refer to elements in the network at least capable of transferring packets." *Id.* at 3:2–3.

Figure 1B (annotated below) explains the claimed invention:

---

[1] Case No. 6:20-cv-00480-ADA ('133 patent); Case No. 6:20-cv-00481-ADA ('800 patent); Case No. 6:20-cv-00485-ADA ('309 patent); Case No. 6:20-cv-00486-ADA ('360 patent).



As shown, $X_1$ and $X_2$ represent traffic flows that are to be split and routed onto one of the paths (*e.g.*, the upper path or the lower path) of a network. *Id.* at 4:9–12, 4:15–19. Each traffic flow is split "based on a given split ratio vector," which the claims recite is "based at least in part on a ratio between a mean traffic rate of a cumulative flow on [a] respective corresponding path and a sum of mean traffic rates of cumulative flows on the plurality of paths." *Id.* at 4:15–19, 15:53–56. For traffic flow $X_1$, the "split ratio vector" is represented as "$q_1$" and "$1-q_1$." *Id.* For example, if $q_1$ were 0.4, then 40% of the $X_1$ traffic would go on the upper path and 60% of the $X_1$ traffic (*i.e.*, $1 - 0.4$) would go on the lower path. The claims of the '309 patent recite that after the flows are split into "sub-flows," combined sub-flows from at least two flows ($X_1$ and $X_2$) are routed onto one path. *Id.* at 15:39–45.

### B. Procedural History and Defendants' Search

On October 14, 2020, WSOU served its preliminary infringement contentions, asserting every claim of the four patents asserted against Defendants, totaling 111 claims.[2] On December

---

[2] Claims 1–22 of the '133 patent; claims 1–24 of the '800 patent; claims 1–16 of the '309 patent; and claims 1–49 of the '360 patent.

9, 2020, Defendants served their preliminary invalidity contentions. Ex. B at 2. On May 27, 2021, this Court held certain claims invalid for indefiniteness. Dkt.[3] 102 (Claim Construction Order).

On June 25, 2021, WSOU served updated infringement contentions, asserting all claims except those that this Court has held to be invalid (still more than 100), including all sixteen claims of the '309 patent. On the same day, Defendants served updated invalidity contentions. Ex. C at 38–41. In the following months, Defendants continued to work closely with their technical expert to identify any additional prior art references regarding the four asserted patents. Fact discovery is still ongoing.[4]

In September and October 2021, Defendants identified three additional references—Bertsekas, Fodor, and Krishnan. On December 17, 2021, Defendants filed a request for EPR with the PTO, based in part on those references, including Bertsekas as the primary reference in several prior art combinations. Ex. D. On January 10, 2022, Defendants served First Amended Invalidity Contentions to reflect the Additional Prior Art. Ex. E.

On January 26, 2022, WSOU indicated that it opposed Dell's amendment. Ex. F. On the same day, the PTO granted the request for EPR. Ex. G at 1. In ordering the EPR, the PTO found a "Substantial New Question of Patentability (SNQ) affecting claims 1–16" of the '309 patent based on the Additional Prior Art. *Id.* at 2, 11–15.

### C. The Additional Prior Art

#### 1. Bertsekas

Bertsekas is a 1991 edition of a textbook on Data Networks. Ex. H. Chapter 5 of Bertsekas surveys and details various network routing techniques and algorithms known at the time. *Id.* at

---

[3] Unless otherwise noted, the ECF numbers refer to entries in C.A. No. 6:20-cv-00485.

[4] Fact discovery is set to close on May 6, 2022, and expert discovery is set to close on July 8, 2022. Dkt. 120 (Joint Notice to Amend Scheduling Order).

363–64. One type of network in which these routing techniques and algorithms may be used is a "datagram network," where "two successive packets of the same user pair[5] may travel along different routes, and a routing decision is necessary for each individual packet." *Id.* at 363.



**Figure 5.1** Routing in a datagram network. Two packets of the same user pair can travel along different routes. A routing decision is required for each individual packet.

Figure 5.1 of Bertsekas (annotated above) illustrates that packets (*i.e.*, small squares labeled 1, 2, 3) of the same user pair (*i.e.*, packets from one of several users represented by large squares labeled 1, 2, and 3) are received and split at nodes (*e.g.*, A or B) into sub-flows of packets that are combined with other sub-flows and routed along paths of the network to destination node D. *Id.* at 364. For example, a flow of packets from user 1 (traffic flow #1) and a flow of packets from user 2 (traffic flow #2) are each received and split at node A. Sub-flows from traffic flow #1 and sub-flows from traffic flow #2 are combined and routed on path A→D. *Id.*

---

[5] Bertsekas describes a "user pair" as "an active session" (Ex. H at 178, 379).

In addition, in annotated Figure 5.1, sub-flows of traffic flow #1 and traffic flow #2 may be routed on another path of the network and further combined with sub-flows of a *third* sub-flow of packets. Additional sub-flows of traffic flow #1 and traffic flow #2 are routed on link A→C instead of A→D. *Id.* Separately, a flow from origin 3 (traffic flow #3) is obtained and split at node B, and the sub-flows are routed on link B→C. *Id.* At node C, sub-flows from traffic flows #1, #2, and #3 are combined and routed on link C→D. *Id.*

Furthermore, Section 5.4 of Bertsekas mathematically describes the notion of flows in formulating "problems of optimal routing." *Id.* at 433–34. Bertsekas refers to a "flow" between two nodes as "the *average* traffic carried by the link [between the two nodes]" and is "express[ed] . . . in data units/sec" as a "traffic arrival rate." *Id.* at 433 (emphasis added). Bertsekas describes a scenario where multiple flows (with each flow being equivalent to an "origin-destination (or OD) pair") arrive at the same origin node and are destined for the same destination node. *Id.* at 434 ("[W]e would allow several OD pairs to have the same origin and destination nodes."). Bertsekas states that when there are multiple paths between the origin and destination nodes, "[t]he routing objective is to divide [the rate of each OD pair, or flow] among the many paths from origin to destination in a way that the resulting total link flow pattern minimizes the cost function," which "expresses qualitatively that congestion sets in when a flow $F_{ij}$ approaches the corresponding link capacity $C_{ij}$." *Id.* at 434. Section 5.5 of Bertsekas elaborates on the behavior of optimal routing algorithms that "requir[e] each OD pair *w* to divide traffic (packets or virtual circuits) among available paths according to . . . fractions." *Id.* at 455.

  2.  **Fodor**

Fodor discusses "optimal path selection and bandwidth allocation algorithms for elastic flows" in a network "under fairness constraints." Ex. I at 667. In particular, Fodor "consider[s] the problem of allocating bandwidth in a fair manner between origin-destination (O-D) pairs for

6

elastic flows that are assigned minimum- and maximum- bandwidth requirements." *Id.* at 668. Fodor "formulate[s] the problem of finding a suitable set of paths between each O-D pair and reserving bandwidth along each of these paths as an optimization task." *Id.* In Fodor, "traffic demands between [O-D] pairs are given and are characterized by a minimum and a maximum bandwidth requirement." *Id.* at 667. Fodor further states that "we also allow multiple paths to realize a given demand (demand-split)." *Id.* Fodor states that "[t]he example network contains 12 nodes and 18 links, with user demands between each pair of nodes. . . . Each user demand can be carried by several (varying between 6 and 13) alternative paths." *Id.* at 676.

        3.      **Krishnan**

Krishnan discusses "path-splitting in multipath networks," and "describe[s] the need to employ path-splitting using multiple routes between source-destination pairs." Ex. J at 2. Figure 1 of Krishnan depicts an "eight-node network" where "[t]he traffic for session B – H is split between the shorter hop path BCEH and the longer one BDFGH." *Id.* at 6.



Figure 1: An eight-node network with sessions $A - C, A - D$ and $B - H$.

Krishnan further states that "[a]s a first step, the flows on all the links in the network that minimize the desired performance metric are computed. The fraction of the input traffic at B that has to be routed through each of its output links, and the traffic from sessions A – C and A – D

that has to use links BC and BD respectively are therefore determined." *Id.* In particular, Krishnan teaches that "[t]he problem of traffic bifurcation at the source, that achieves path splitting, is solved by computing the flows on all the links in the network to minimize a given objective function, such as average delay or packet loss probability." *Id.* at 1.

### III. ARGUMENT

This Court has discretion to permit a party to amend or supplement its invalidity contentions for good cause. *See* Fed. R. Civ. P. 16(b)(4); *MV3 Partners LLC v. Roku, Inc.*, No. 6:18-CV-00308-ADA, Dkt. 146 (W.D. Tex. Mar. 23, 2020). Good cause requires the party seeking relief to show that, despite the exercise of diligence, it cannot reasonably meet a scheduling deadline. *See, e.g., Arbitron, Inc. v. Int'l Demographics Inc.*, Case No. 2:06-CV-434 (TJW), 2008 WL 4755761 (E.D. Tex. Oct. 29, 2008). In evaluating whether good cause exists, courts in the Fifth Circuit consider four factors: 1) the explanation for the failure to meet the deadline; 2) the importance of the thing that would be excluded; 3) the potential prejudice in allowing the thing that would be excluded; and 4) the availability of a continuance to cure such prejudice. *S & W Enters., L.L.C. v. Southtrust Bank of Ala.*, 315 F.3d 533, 535–36 (5th Cir. 2003).

Application of these factors demonstrates that there is good cause to permit Defendants to amend their Invalidity Contentions with the Additional Prior Art. As discussed in greater detail below, Defendants were unable to include the Additional Prior Art in their June 25, 2021 invalidity contentions despite diligent efforts because of the mathematical nature of the claims and the vast number of claims WSOU asserted. In addition, the Additional Prior Art and corresponding amendments to Defendants' contentions are important to the case, and indeed the PTO already concluded that these references raise one or more substantial new question of patent validity. Furthermore, WSOU will not be prejudiced if Defendants' proposed amendments are allowed

8

because it has had notice of the Additional Prior Art since at least December 2021, and fact and expert discovery deadlines, as well as trial, are months away.[6]

### A. Defendants Have Been Diligent, and Their Inability to Include the Additional Prior Art in Their June 25, 2021 Invalidity Contentions Was Reasonable

By maintaining its assertion of over 100 claims of the four patents-in-suit, WSOU forced Defendants to search for prior art covering all of the claims. Defendants were diligent in searching for and analyzing the prior art in the crowded fields relevant to the four patents, which included the particularly challenging and time-consuming task of searching for the mathematical concept (the "split ratio") found at the core of the '309 patent claims. Defendants located the Additional Prior Art only a few months after the June 25, 2021 deadline for invalidity contentions had passed.

Courts in this Circuit have routinely permitted amendment of invalidity contentions based on diligence shown through continuous effort to identify additional prior art. *See, e.g.*, *Maxell Ltd. v. Apple Inc.*, No. 5:19-CV-00036-RWS, 2020 WL 10456917, at *2 (E.D. Tex. Feb. 24, 2020) (granting motion for leave to amend); *Ohio Willow Wood Co. v. Thermo-Ply, Inc.*, No. 07-CV-274, 2009 WL 10677580, at *3 (E.D. Tex. June 10, 2009) (same). Due to the "difficulty of discovering all relevant prior art and supplemental materials," courts also have considered the nature of the delay and the newly discovered prior art. *Maxell*, 2020 WL 10456917, at *2. For example, a "delay . . . can be expected even by a party conducting a proper investigation." *Id.* "[T]he critical issue is not what the party did after they discovered the prior art; rather, the critical issue is whether or not [the party seeking to amend] exercised diligence in discovering the prior art." *Uniloc 2017 LLC v. Google LLC*, No. 2:18-CV-00493-JRG-RSP, 2019 WL 6465318, at *1 (E.D. Tex. Dec. 2, 2019) (citation and quotation marks omitted).

---

[6] In light of the current schedule and the fact that WSOU will not be prejudiced, Defendants do not affirmatively address the fourth factor—the availability of a continuance to cure any prejudice.

The subject matter of the '309 patent claims required an unusually arduous search methodology. The claims are directed to a mathematical "split ratio" that is used to split flows of data traffic in a network. As such, Defendants' efforts to find prior art references disclosing this mathematical ratio demanded a time-consuming and difficult search through various disclosures—not only online but through physical prior art references—concerning ratios, formulas, and other mathematical expressions in this context. For example, as shown in Defendants' proposed amendments, although Bertsekas uses its own variables and language, Bertsekas discloses precisely the same ratio claimed in the '309 patent. With substantial assistance from Defendants' technical expert, Defendants identified and obtained the Additional Prior Art between September and October 2021, only a few months after Defendants served their June 25, 2021 invalidity contentions. Defendants thoroughly analyzed and vetted the Additional Prior Art, and then promptly filed an EPR request based on those references in December 2021. Then, on January 10, 2022, just weeks later and promptly after the holidays, Defendants served their First Amended Invalidity Contentions reflecting the Additional Prior Art.

The sheer volume of the claims of the four patents asserted by WSOU added to the challenges of searching for all relevant prior art. In its preliminary invalidity contentions, WSOU undiscerningly asserted *every single claim* of the '133, '800, '309, and '360 patents. This obligated Defendants to evaluate over *one hundred* asserted claims and identify relevant applicable prior art to serve as the basis of invalidity contentions. On May 21, 2021, this Court invalidated several claims following claim construction. Dkt. 102. WSOU, however, continued to assert *every* remaining claim, still totaling over 100. In addition to retaining a prior art search firm and conducting their own investigation of prior art references and systems in conjunction with their technical expert—both in electronic and physical form—Defendants sought to obtain relevant

information from multiple third parties, including information related to available prior art systems. Only through this multifaceted and continuous endeavor were Defendants able to locate the Additional Prior Art after June 2021, which justifies the timing of the First Amended Invalidity Contentions. *See Maxell*, 2020 WL 10456917, at *2 (granting motion for leave to amend where defendant's "litigation counsel, an additional intellectual property law firm and a prior art search firm all conducted extensive prior art searches").

Thus, Defendants were diligent in searching for prior art, and, under the circumstances, identifying and charting the Additional Prior Art by June 25, 2021 was reasonable and should not preclude amendment.

### B. Defendants' Amendments Are Important to the Case

The three Additional Prior Art references are material and significant to Defendants' invalidity defense in this case. "Prior art references potentially rendering a patent invalid are important." *Uniloc 2017*, 2019 WL 6465318, at *2 (granting motion for leave to supplement); *Motio, Inc. v. Avnet, Inc.*, No. 4:12-CV-647, 2015 WL 5952530, at *3 (E.D. Tex. Oct. 13, 2015) (granting motion for leave to amend and finding an "exceedingly relevant" reference "absolutely appropriate art to consider"). In addition to further illustrating the state of the art as of the priority date, the Additional Prior Art has significant potential to demonstrate the '309 patent claims as invalid. *See* Ex. E.

For instance, Bertsekas shows that the '309 patentee claimed—literally—textbook examples of decades-old technology. Although published fourteen years before the '309 patent's filing date, Bertsekas discloses the same mathematical ratio that the '309 applicant contended as distinguishing the claims from the prior art; indeed, the claim amendment with that ratio is how the applicant obtained allowance. Ex. K at 8. In addition, Fodor's disclosures concerning "optimal path selection and bandwidth allocation algorithms for elastic flows," including to reduce a

11

variance and bandwidth requirement associated with those flows and achieving the result in a network, likewise bear directly on the invalidity of the claims (*e.g.*, claims 3–9, 13, and 14). Krishan's teachings concerning "path-splitting in multipath networks," including to reduce a loss probability when splitting traffic flows, likewise are important to establish the invalidity of the claims (*e.g.*, claims 4–6). Ex. E, App. C (obviousness chart).

The PTO agreed that the Additional Prior Art was potentially important, and ordered EPR of all sixteen claims of the '309 patent. Ex. G. The PTO found that the disclosures of Bertsekas, Fodor, and Krishnan are highly relevant to the '309 patent claims and thus raise "substantial new question[s] of patentability." *Id.* at 8–15. The PTO issued its decision on January 26, 2022, merely a month (including the holidays) after Defendants' request. Accordingly, as underscored by the PTO's recent decision to order EPR of the '309 patent claims largely based on the Additional Prior Art, Defendants' proposed amendments reflecting these three references are significantly important, and thus this factor also weighs in favor of granting leave.

### C. WSOU Will Not Be Prejudiced by the Amendment and a Continuance Would Be Unnecessary

WSOU has no reasonable basis to claim prejudice by Defendants' First Amended Invalidity Contentions; indeed, WSOU has identified none. WSOU had sufficient notice of the majority of Defendants' invalidity arguments regarding the over 100 then-asserted claims since June 2021. Although substantively important, the Additional Prior Art constitutes only three references, a small fraction of the total number of prior art references Defendants had already identified to address the over 100 then-asserted claims. In addition, the Additional Prior Art pertains to only one of the four patents asserted by WSOU against Defendants in four cases. Notably, through the filing of the EPR request, WSOU received notice of the Additional Prior Art on December 17, 2021, *prior* to receiving Defendants' First Amended Invalidity Contentions. In

12

any event, WSOU still has ample opportunity to investigate and analyze the contentions based on the Additional Prior Art, as fact discovery does not close until May 6, 2022, and expert discovery does not close until July 8, 2022.

In addition, the earliest proposed trial date in these cases is October 3, 2022 (Dkt. 120), which is more than seven months from the date of this motion and therefore no continuance is needed to account for Defendants' requested amendment. *See Tyco Healthcare Grp. LP v. E-Z-EM, Inc.*, No. 2:07-CV-262 (TJW), 2010 WL 7853420, at *1 (E.D. Tex. Apr. 1, 2010) (finding that "Plaintiffs have sufficient notice of Defendants' invalidity positions" and allowing defendants to add prior art six months before jury selection).

Any possible claim of prejudice to WSOU is further negated by Defendants' efforts to reduce the scope of their invalidity arguments. As stipulated by the parties and ordered by this Court, on January 31, 2022, Defendants reduced the number of prior art references to thirteen per patent, a significant reduction in the total volume of prior art put forth. Ex. L (Dec. 6, 2021 Email Order). Defendants will further narrow the scope of prior art by May 23, 2022—before close of expert discovery—to a number that the parties will agree to by April 2022. *Id.* The three Additional Prior Art references will thus not increase the total burden on WSOU whatsoever. Therefore, these factors also weigh in favor of granting this motion.

**IV.     CONCLUSION**

For the foregoing reasons, Defendants respectfully ask the Court to grant this motion for leave to amend Defendants' invalidity contentions.

Dated:  March 2, 2022        By:   */s/ Barry K. Shelton*
                                                     Barry K. Shelton
                                                     Texas State Bar No. 24055029
                                                     bshelton@winston.com
                                                     **WINSTON & STRAWN LLP**
                                                     2121 North Pearl Street, Suite 900
                                                     Dallas, TX  75201
                                                     Telephone:  214-453-6407
                                                     Facsimile:  214-453-6400

Benjamin Hershkowitz
bhershkowitz@gibsondunn.com
Brian A. Rosenthal
brosenthal@gibsondunn.com
Allen Kathir
akathir@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
200 Park Avenue
New York, NY  10166-0193
Telephone:  212.351.4000
Facsimile:  212.351.4035

Y. Ernest Hsin
ehsin@gibsondunn.com
Jaysen S. Chung
jschung@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
555 Mission Street, Suite 3000
San Francisco, CA  94105-0921
Telephone:  415.393.8200
Facsimile:  415.393.8306

Ryan K. Iwahashi
riwahashi@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
1881 Page Mill Road
Palo Alto, CA  94304-1211
Telephone:  650.849.5300
Facsimile:  650.849.5333

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

The undersigned certifies that on March 2, 2022, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document through the Court's CM/ECF system under Local Rule CV-5(a).

*/s/ Barry K. Shelton*
Barry K. Shelton
